RECORD NO. 13-5

===============================================================

*In The*

# United States Court of Appeals

*For The Fourth Circuit*

# WILLIAM LEROY BARNES

*Petitioner - Appellant,*

v.

# CARLTON JOYNER, Warden, Central Prison, Raleigh, North Carolina,

*Respondent - Appellee,*

### PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

ROY COOPER
Attorney General

Jonathan P. Babb
Special Deputy Attorney General
NC Department of Justice
Post Office Box 629
Raleigh, North Carolina  27602

*COUNSEL FOR APPELLEE*

===============================================================

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF PURPOSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      I.      CONTRARY TO THIS COURT'S PRECEDENT AND OPINIONS OF THE UNITED STATES SUPREME COURT, THE PANEL MAJORITY DID NOT CORRECTLY APPLY 28 U.S.C. § 2254(d) IN ITS REVIEW OF THE DECISIONS OF THE NORTH CAROLINA STATE COURTS.. . . . . . . . . 6

      II.     THE MAJORITY OPINION CONFLICTS WITH <u>REMMER V. UNITED STATES</u>, 347 U.S. 227 (1954) AND <u>WHITE V. WOODALL</u>, __ U.S. __, 2014 U.S. LEXIS 2935 (2014) BY IMPROPERLY EXTENDING <u>REMMER</u>'S LANGUAGE OF "ABOUT THE MATTER PENDING BEFORE THE JURY" TO THE PRESENT CASE.. . . . . . . . . . . . . . . . . . . . . . . . 8

      III.    THE MAJORITY OPINION'S REMAND OF THE CASE FOR AN EVIDENTIARY HEARING IN DISTRICT COURT IS IN CONFLICT WITH THE DECISION OF THE UNITED STATES SUPREME COURT IN <u>CULLEN V. PINHOLSTER</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

### FEDERAL CASES

Barnes v. Joyner, 2014 U.S. App. LEXIS 8414 (4th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . passim

Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . 1,11

DeCastro v. Branker, 642 F.3d 442 (4th Cir. 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,7,8

Haley v. Blue Ridge Tranfer Co., Inc., 802 F.2d 1532 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . . 8

Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . 1,7

Remmer v. United States, 347 U.S. 227 (1954).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9,10

Smith v. Phillips, 455 U.S. 209 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

White v. Woodall, __ U.S. __, 2014 U.S. LEXIS 2935 (2014).. . . . . . . . . . . . . . . . . . 7,8,9,10

Williams v. Taylor, 529 U.S. 362 (2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,7

### STATE CASE

State v. Barnes, 345 N.C. 184, 481 S.E.2d 44 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,4

### DOCKETED CASE

Hurst v. Joyner, No. 13-06.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

### FEDERAL STATUTE

28 U.S.C. § 2254(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

### STATE STATUTES

N.C. Gen. Stat. §15A-1419(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

N.C. Gen. Stat. § 15A-2000. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

N.C. Gen. Stat. § 15A-2000(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

N.C. Gen. Stat. § 15A-2000(f)(9). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**RULES**

Fed. R. App. P. 35. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 40. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

NOW COMES respondent-appellee [hereinafter "the State"] by the Honorable Roy Cooper, Attorney General of North Carolina, Special Deputy Attorney General Jonathan P. Babb, pursuant to Fed. R. App. P. 35 and 40 and Local Rules 35 and 40, respectfully moving the Court to rehear matters in this appeal and additionally to grant rehearing en banc.

### STATEMENT OF PURPOSE

In counsel's judgment after review of the 2-1 decision in Barnes v. Joyner, 2014 U.S. App. LEXIS 8414 (4th Cir. 2014))[hereinafter "Barnes"], rehearing and, particularly, rehearing en banc are warranted because of the existence of the following:

a. Barnes is in conflict with decisions of the United States Supreme Court, including:

1. The majority opinion failed to observe the provisions of 28 U.S.C. § 2254(d) as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996, by its failure to use the deferential standard of review of North Carolina state court decisions. Williams v. Taylor, 529 U.S. 362, 410-11 (2000); Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770 (2011).

2. The majority opinion also conflicts with Cullen v. Pinholster, ___ U.S. ___, ___, 131 S. Ct. 1388 (2011) by remanding for an evidentiary hearing in District Court. The United States Supreme Court held in Cullen that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Id. at 1398.

3. The majority opinion also conflicts with Remmer v. United States, 347 U.S. 227 (1954) and White v. Woodall, __ U.S. __, 2014 U.S. LEXIS 2935 (2014) by extending Remmer's presumption of prejudice by its holding that a matter that was not before the jury (whether a juror would "enter into the

Kingdom of Heaven") was actually a matter before the jury because it was part of a defense counsel's argument to the jury in sentencing.

b.  The majority opinion is in conflict with opinions of this Court by its failure to view "this appeal through the highly deferential lens mandated by the Antiterrorism and Effective Death Penalty Act." DeCastro v. Branker, 642 F.3d 442 (4th Cir. 2011).

c.  The proceeding involves one or more questions of exceptional importance in that the majority opinion fails to give due deference to the findings and decisions of the state court in post-conviction proceedings as required by 28 U.S.C. § 2254(d).

d.  This Court held the case of Hurst v. Joyner, No. 13-06, in abeyance pending the decision in Barnes. The result in Barnes will affect the decision in Hurst, therefore en banc consideration is necessary to ensure or maintain uniformity of this Court's decisions.

## INTRODUCTION

Over twenty-one years ago, on 29 October 1992, Barnes and two co-defendants went to the Salisbury home of B.P. and Ruby Tutterow to rob the Tutterows. Ruby Tutterow died as a result of multiple gunshot wounds. She suffered ten wounds in all, four of which were to the head. B.P. Tutterow also suffered multiple gunshot wounds and died as a result of a gunshot to the chest in combination with several shots to the face and head. B.P. had also been beaten and had suffered a number of defensive wounds.

After the murders, Barnes sold one of the murder weapons and after selling his weapon he was overheard saying to someone on the telephone "I've got rid of mine, you need to get rid of yours." (T Vol. III p. 288) Barnes had gunshot residue (GSR) on his hand and the waistband of his pants. State v. Barnes, 345 N.C. 184, 202, 481 S.E.2d 44, 53 (1997). Barnes wore a gold necklace

and a watch belonging to the Tutterows at an early court appearance in November. Id.

During closing argument, counsel for co-defendant Chambers argued:

> And regardless of what you decide today, if you are a true believer, you know that he will have a second judgment day. And it wont take place in a court of law, and there won't be any judges in black robes, and there wont be any objections, and there won't be any lawyers. There will be a Book of Life opened to a page with his name on it. On that day, he will be judged, not by the law of man, but by a higher law, the laws of God. And he will be judged for his eternal life, his soul at that point. If you believe, you will know that is what will happen to him. That is the appropriate time and place and the appropriate person to decide what will happen to the life of Frank Chambers. If you're a true believer and you believe that Frank Chambers will have a second judgment day, then we know that all of us will too. All of us will stand in judgment one day. And what words is it that a true believer wants to hear? Well done, my good and faithful servant. You have done good things with your life. You have done good deeds. Enter into the Kingdom of Heaven. Isn't that what a true believer wants to hear? Or does a true believer want to explain to God, yes, I did violate one of your commandments. Yes, I know they are not the ten suggestions. They are the ten commandments. I know it says, Thou shalt not kill, but I did it because the laws of man said I could. You can never justify violating a law of God by saying the laws of man allowed it. If there is a higher God and a higher law, I would say not.

(JA pp. 1531-1532)[1]

At trial after sentencing, defense counsel told the trial court that a juror had taken a Bible into the jury room and read to the jury members from it before deliberations and that another juror called a minister to ask a question about the death penalty. Defense counsel moved for a mistrial, new trial, new sentencing, to set aside the verdict, and for appropriate relief. The trial court denied all motions. (JA pp. 1601-1603)

---

[1] While the court states the argument was not objected to by the State, when counsel first began asking if there where any "true believers" the district attorney did object, but was overruled by the trial court. (JA p. 1530)

In its opinion the North Carolina Supreme Court rejected petitioner's argument, holding that the trial court did not abuse its discretion by failing to inquire further into the alleged juror communication as there was no evidence that the alleged conduct was directed to the facts or law at issue in the case. <u>Barnes</u>, at 225-228, 481 S.E.2d at 66-68 (1997) (JA pp. 1853-1855).

In his State Court MAR, Barnes argued that the claim was not barred by N.C. Gen. Stat. § 15A-1419(a)(2) as there was new information. The new information consisted of affidavits from an investigator, previous post-conviction counsel, a paralegal working with post-conviction counsel and one juror (Peacock), as well as unsworn "juror interview" notes.

The evidence presented by Barnes in support of this claim was accurately summarized in the dissent by Judge Agee.

> When filing his North Carolina Motion for Appropriate Relief ("MAR"), Barnes attached several affidavits and an interview summary purporting to support his claim of "juror misconduct and extraneous influences on the jury." (J.A. 1882.) An affidavit from Barnes' private investigator averred that juror Hollie Jordan told him she believed that the co-defendant's attorney had "quot[ed] scripture out of context" when he asserted "the jurors would one day face judgment for their actions" if they sentenced the defendants to death. She "called her pastor" and "discussed the lawyer's argument with" him, during which time the pastor informed her of "another biblical passage which contradicted the passage relied upon by the defense attorney." (J.A. 1892.) On the day of her interview with the private investigator, Ms. Jordan signed an interview summary that does not mention any conversation with her pastor. Instead, Ms. Jordan's signed statement says that she was troubled by the co-defendant's attorney's argument, and that she "brought a Bible from home into the jury deliberation[,] she read an unspecified passage from the Bible stating that it is the duty of Christians to abide by the laws of the state[, and that she] knew the passage from church." (J.A. 1898.)
>
> Several other jurors recalled that one or more jurors read from the Bible during the course of the jury's deliberations. None of the jurors could remember the verses read, but some of them recalled that

- 4 -

> they at least in part related to the co-defendant's attorney's troubling closing argument, and "dealt with life and death." A few jurors also recalled that a juror had talked to her pastor during the proceedings. (J.A. 1892-93, 1900, 1902-03.)

(Slip Op. pp. 60-62)

The post-conviction state superior court held this claim as procedurally barred under N.C. Gen. Stat. § 15A-1419(a)(2) as it had already been determined by the North Carolina Supreme Court on direct appeal. The superior court also found that the "allegedly new evidence adds nothing to the issue as it was presented during defendant's original appeal, and the allegations are subject to the same analysis inherent in that decision" and held the claim to be without merit. ("The motion based upon this allegation is summarily denied as procedurally barred and without merit.") (MAR Order p. 13)

Barnes raised the claim in his habeas petition. The District Court denied the claim stating:

> Barnes' evidence does not suggest that the pastor advised her about how to make a decision concerning whether the defendants' crimes warranted death, cf. Hernandez v. Martel, 824 F. Supp. 2d 1025, 1124 (C.D. Cal. 2011) (granting habeas relief where petitioner's evidence demonstrated a juror's priest told her "that the 'only' thing or the 'main' thing she should consider [when deciding whether to impose the death penalty] was the petitioner's potential for rehabilitation"), or urged her to impose a death sentence, cf. Stockton, 852 F.2d at 745 (concluding that a man's remark to a group of jurors that they should "fry" the defendant "posed a potential for prejudice that was too serious to ignore"). **Instead, he directed her to a portion of the Bible in response to a defense argument that was most assuredly not before the jury** -- i.e., whether God would condemn a juror who voted to impose a death sentence. In addition, the passage in question, as characterized by Barnes, expressed no opinion on the propriety of the death penalty and simply indicated that a Christian has a duty to follow the laws of the state, cf. Robinson v. Polk, 438 F.3d 350, 363 (4th Cir. 2006) (explaining that the Bible "invites the listener to examine his or her own conscience from within"), which, in the case of North Carolina, permitted a jury,

- 5 -

> in its discretion, to recommend that a convicted murderer like Barnes serve life in prison or be put to death, N.C. Gen. Stat. § 15A-2000(b)(3) (permitting the jury to recommend "whether the defendant should be sentenced to death or to imprisonment in the State's prison for life"). Nothing in Barnes' evidence indicates that Pastor Lomax shared his personal -- or Biblical -- view on the death penalty, advised Jordan about how to make her decision, or even knew in what trial Jordan was serving. Consequently, Barnes did not demonstrate that Pastor Lomax's conversation with Jordan reasonably questioned the integrity of the verdict.

(JA pp. 2142-2144)(emphasis added.)

The majority concludes that the district court erred in refusing to rule in Barnes' favor on his juror communication claim. As argued below, Judge Agee's strong dissent presents compelling reasons for rehearing en banc and a reversal of the majority's decision.

## ARGUMENT

**I. CONTRARY TO THIS COURT'S PRECEDENT AND OPINIONS OF THE UNITED STATES SUPREME COURT, THE PANEL MAJORITY DID NOT CORRECTLY APPLY 28 U.S.C. § 2254(d) IN ITS REVIEW OF THE DECISIONS OF THE NORTH CAROLINA STATE COURTS.**

The majority opinion refers to 28 U.S.C. § 2254(d) and claims to follow the deferential standard established by § 2254(d) and mandated by the opinions of the United States Supreme Court and this Court. However, as pointed out in the dissenting opinion, the majority decision does not give actual deference to the state court decision.

> **The majority opinion acknowledges AEDPA's constraints only in the abstract, while simultaneously analyzing the case at bar as if it were on direct appeal from the trial.** Thus, the majority opinion engages in a first-impression analysis that substitutes "its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly," a result AEDPA does not permit. See Williams v. Taylor, 529 U.S. 362, 411 (2000).

- 6 -

> ......
>
> **Although the majority opinion fleetingly purports to apply AEDPA deference, it in truth simply disagrees with an interpretation of Remmer that would allow the state court to conclude that the conversation alleged to have occurred here was not about a "matter pending before the jury."** Cf. Maj. Op. at 42. In doing so, the majority opinion "disregards perfectly reasonable interpretations [of Supreme Court precedent] and hence contravenes § 2254(d)'s deferential standard of review." See White, 2014 WL 1612424, at *6.

Barnes (dissent)(Slip Op. at 55, 58) (Emphasis added.)

The dissent correctly analyzes the claims under § 2254(d)'s standard as set forth in Williams v. Taylor, 529 U.S. 362, 410-411 (2000); Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770 (2011); White v. Woodall, __ U.S. __, 2014 U.S. LEXIS 2935 (2014) and DeCastro v. Branker, 642 F.3d 442 (4th Cir. 2011).

As the dissent acknowledges, the United States Supreme Court has repeatedly instructed the circuit courts of the deference that AEDPA mandates in federal habeas review.

> Recent Supreme Court opinions addressing § 2254 unfailingly and repeatedly impress upon circuit courts of appeals "the substantial deference that AEDPA requires" federal courts to give to state court adjudications of state prisoner claims. White v. Woodall, --- U.S. ---, No. 12-794, 2014 WL 1612424, at *2 (observing that § 2254(d)'s limitations are "a provision of law that some federal judges find too confining, but that all federal judges must obey"); Nevada v. Jackson, 133 S. Ct. 1990, 1994 (2013) (per curiam); Burt v. Titlow, 134 S. Ct. 10, 16 (2013) ("AEDPA erects a formidable barrier to federal habeas relief for [state] prisoners."); Greene v. Fisher, 132 S. Ct. 38, 43 (2011) (observing that AEDPA's standard is "difficult to meet, because [its purpose] is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction" (internal quotation marks omitted)); Harrington v. Richter, 131 S. Ct. 770, 785 (2011) ("A state court must be granted a deference and latitude that are not in operation when the case involves review under" direct review.); Renico v. Lett, 559 U.S. 766, 773 (2010) (explaining that AEDPA

> "'demands that state-court decisions be given the benefit of the doubt'" (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). The Supreme Court has also warned against "collapsing the distinction between 'an unreasonable application of federal law' and . . . 'an incorrect or erroneous application of federal law." Jackson, 133 S. Ct. at 1994 (quoting Williams, 529 U.S. at 412).

(Slip Op. pp. 55-56)

This Court has recognized the deference required by AEDPA in habeas review.

> Stated differently, to obtain federal habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

DeCastro v. Branker, 642 F.3d 442, 449 (4th Cir. 2011)(quoting Harrington, 131 S. Ct. at 786-87).

In sum, the majority opinion did not properly apply 28 U.S.C. § 2254(d) and in essence treated Barnes' claims as if no deference was due the North Carolina State Court decision.

**II.    THE MAJORITY OPINION CONFLICTS WITH REMMER V. UNITED STATES, 347 U.S. 227 (1954) AND WHITE V. WOODALL, __ U.S. __, 2014 U.S. LEXIS 2935 (2014) BY IMPROPERLY EXTENDING REMMER'S LANGUAGE OF "ABOUT THE MATTER PENDING BEFORE THE JURY" TO THE PRESENT CASE.**

The state MAR court held that Barnes' juror misconduct claim was meritless. This was not contrary to, or an unreasonable application of United States Supreme Court case law, primarily Remmer. Remmer prohibits "any private communication, contact, or tampering, directly or indirectly, with a juror during trial about the matter pending before the jury." 347 U.S. at 229 (emphasis added). Of course, the communication here was private, in that it did not take place at trial. But, again, not all such situations require a jury's verdict to be overturned. See Smith v. Phillips, 455 U.S. 209, 217 (1982); see also Haley v. Blue Ridge Tranfer Co., Inc., 802 F.2d 1532,

- 8 -

1537 n.9 (1986) (indicating that "certain kinds of extrajudicial contacts may amount to nothing more than innocuous interventions that simply could not justify a presumption of prejudicial effect").

The crux of the Remmer analysis then becomes discerning whether the communication between the juror and her pastor was "about the matter pending before the jury." 347 U.S. at 229. The District Court correctly held it was not. The dissent correctly held it was not. The majority opinion was in error holding it was unreasonable not to extend Remmer's "matter pending before the jury" to now include whether a juror would "enter into the Kingdom of Heaven."

The passage of the Bible that Barnes claims is at issue, expressed no opinion on whether to impose the death penalty or life imprisonment. Rather the scripture, claimed to be at issue, was on a Christian's duty to follow the laws of the state, which in this case allowed for life imprisonment **or** the death penalty. As the District Court pointed out, "[n]othing in Barnes' evidence indicates that Pastor Lomax shared his personal -- or Biblical -- view on the death penalty, advised Jordan about how to make her decision, or even knew in what trial Jordan was serving." (JA pp. 2143-2144)

Further, the dissent points out that the United States Supreme Court has recently made it clear in White v. Woodall that habeas review does not require state courts to extend precedent or license federal courts to treat the failure to do so as error.

> Limiting the "unreasonable application" prong further, the Supreme Court recently rejected the Fourth Circuit's additional characterization that a state court could unreasonably apply Supreme Court precedent by "unreasonabl[y] refus[ing] to extend a legal principle to a new legal context where it should apply." White, 2014 WL 1612424, at *8 ("To the extent the unreasonable-refusal-to-extend rule differs from the one embraced in Williams and reiterated many times since, we reject it. Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the

- 9 -

failure to do so as error.").

(Slip Op. p. 57)

A juror's ultimate spiritual fate was not a factor to be decided at Barnes' sentencing hearing. Barnes' jury was directed in the factors it could consider under the North Carolina capital sentencing statute. N.C. Gen. Stat. § 15A-2000. The aggravating factors and mitigating factors are controlled by this statute. Jurors are limited to considering only the aggravating factors listed in N.C. Gen. Stat. § 15A-2000(e) but may consider both statutory and non-statutory mitigating factors. Even the mitigating factors that can be submitted to the jury are limited by the evidence presented as detailed in N.C. Gen. Stat. § 15A-2000(f)(9) which states "Any other circumstance arising from the evidence which the jury deems to have mitigating value."

All of the aggravating factors and mitigating factors must relate to the defendant's crimes or the defendant himself. Only factors arising from the evidence presented at trial can be submitted to the jury. As the dissent points out in footnote 10 "Closing argument is not evidence." (Slip Op. p. 78) Neither is a juror's own eternal salvation a matter before the jury. Consequently the communication by the juror was not a matter before the jury to be decided at Barnes' trial. The majorities extension of the Remmer presumption to the juror communication in the present case violates both Remmer and White v. Woodall. There is no clearly established United States Supreme Court precedent defining whether a juror's consideration of his or her own eternal salvation constitutes a "matter before the jury." The majority's attempt to extend Remmer in this context violates White v. Woodall.

### III. THE MAJORITY OPINION'S REMAND OF THE CASE FOR AN EVIDENTIARY HEARING IN DISTRICT COURT IS IN CONFLICT WITH THE DECISION OF THE UNITED STATES SUPREME COURT IN <u>CULLEN V. PINHOLSTER</u>.

The majority opinion held that the District Court erred in denying Barnes an evidentiary hearing in Federal Court. But to have been entitled to a hearing in the District Court, Barnes had to overcome the strict standards of 28 U.S.C. § 2254(d). Because Barnes did not meet those standards, the majority's remand order was error.

The United States Supreme Court emphatically held in <u>Cullen v. Pinholster</u>, ___ U.S. ___, ___, 131 S. Ct. 1388, 1398 (2011), that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." As such, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitations of § 2254(d)(1) on the record that was before that state court." <u>Id.</u> at 1400. It follows that, a habeas petitioner cannot submit evidence to the district court, either through an evidentiary hearing or otherwise, that he did not present to the state court. <u>Id.</u> Barnes' juror communication claim was decided on the merits in state court. <u>Barnes</u> is not entitled to a hearing in federal habeas review and the majority remand order is error.

### CONCLUSION

For good cause shown above, the State respectfully requests that the Court direct a rehearing or rehearing <u>en banc</u> to review the panel majority's decisions concerning matters of exceptional importance.

- 11 -

Respectfully submitted, this the 19th day of May, 2014.

                                              ROY COOPER
                                              ATTORNEY GENERAL

                                              s/ Jonathan P. Babb
                                              Jonathan P. Babb
                                              Special Deputy Attorney General
                                              N.C. State Bar No. 20832
                                              N.C. Department of Justice
                                              Post Office Box 629
                                              Raleigh, North Carolina  27602-0629
                                              Telephone: (919) 716-6575
                                              Facsimile: (919) 716-0001
                                              Email: jbabb@ncdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on 19 May 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

M. Gordon Widenhouse, Jr.
mgwidenhouse@RWF-law.com

George Currin
georgecurrin@aol.com

APPELLANT'S COUNSEL OF RECORD

This the 19th day of May, 2014.

                                                            s/ Jonathan P. Babb
                                                           Jonathan P. Babb
                                                           Special Deputy Attorney General